1  DYLAN J. LIDDIARD, State Bar No. 203055
   THOMAS J. MARTIN, State Bar No. 150039
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5  Email:      dliddiard@wsgr.com
   tmartin@wsgr.com
6
   Attorneys for Plaintiff
7  Establishment Labs Holdings, Inc.

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      SOUTHERN DIVISION

11 ESTABLISHMENT LABS HOLDINGS,  )  CASE NO.: 8:18-cv-01554
   INC.                          )
12                               )  **COMPLAINT FOR: BREACH
                Plaintiff,       )  OF CONTRACT; BREACH OF
13                               )  THE IMPLIED COVENANT
         v.                      )  OF GOOD FAITH AND FAIR
14                               )  DEALING; TORTIOUS
   KELLER MEDICAL, INC., ALLERGAN)  INTERFERENCE WITH
15 SALES, LLC, AND ALLERGAN, PLC,)  CONTRACT; CONSPIRACY;
                                 )  TORTIOUS INTERFERENCE
16              Defendant.       )  WITH PROSPECTIVE
                                 )  ECONOMIC ADVANTAGE;
17                               )  AND UNFAIR COMPETITION**
                                 )
18                               )  **SPECIFIC PERFORMANCE
                                 )  SOUGHT**
19                               )
                                 )  **JURY TRIAL DEMANDED**
20                               )
                                 )
21 _____)

COMPLAINT
CASE NO. 8:18-cv-01554

# COMPLAINT

Plaintiff Establishment Labs Holdings, Inc. ("Establishment Labs") by and for its Complaint against Keller Medical, Inc. ("Keller Medical"), Allergan Sales, LLC, and Allergan plc[1] alleges as follows:

## SUMMARY OF COMPLAINT

1.  This is a straightforward action aimed to make amends to Establishment Labs for the Defendants' failure to honor (and/or otherwise frustrate) the terms of a 5-year distribution agreement entered into between Establishment Labs and Keller Medical in October of 2016.  Under the Distribution Agreement, Establishment Labs may place orders with Keller Medical for its Keller Funnel, or "insertion sleeve" product, for sale to customers when bundled with Plaintiff Establishment Labs' breast implant products.  The bundled product – which combines Keller's best-in-class sleeve with Establishment Labs' superior, Motiva-brand implants – is uniquely appealing to physicians and patients.  The insertion sleeve helps ensure that the Motiva implants are safely (contamination free) and accurately placed within the patient.

2.  Keller Medical honored two purchase orders under the Distribution Agreement (one of which was specifically included in the agreement itself) through the first half of 2017, but has since inexplicably and arbitrarily refused to accept any further orders from Establishment Labs for the insertion sleeves.  After the first orders, Keller Medical has refused to accept any additional orders, without elaboration or explanation.  In so refusing, Keller Medical merely refers to a phrase in the Distribution Agreement that says orders "shall be subject to acceptance by Keller" and then declares that Keller Medical does not accept the order from Establishment Labs.  Establishment Labs maintains that this constitutes a breach of the letter and the spirit of the Distribution Agreement (as more fully set forth

---

[1] Keller and the Allergan defendants are collectively referred to herein as "Defendants."

below).  In addition, such conduct violates the covenant of good faith and fair dealing implied in every contract.

3. In the middle of 2017, and generally coinciding with Keller Medical's inexplicable refusal to accept additional orders from Establishment Labs under the Distribution Agreement, Defendant Allergan plc announced that its wholly-owned subsidiary, Defendant Allergan Sales, LLC, (collectively, "Allergan") was acquiring Keller Medical.  Allergan has its own breast implant product for its plastic surgery business, and on information and belief, Establishment Labs alleges that Allergan has caused and/or conspired with Keller Medical to cause the breach and/or frustration of the Distribution Agreement – namely, by arbitrarily refusing to honor any purchase orders from Establishment Labs, thus restricting the distribution of the Keller Funnel to Allergan's own sales force.

4. Establishment Labs seeks specific performance from Defendants Keller Medical and/or Allergan Sales, LLC requiring them to honor their supply obligations under the Distribution Agreement.  In addition, Establishment Labs has been harmed by Defendants' conduct – in an amount to be determined at trial – and seeks to recover all damages (and other compensation) arising from Defendants' misconduct.

## THE PARTIES

5. Plaintiff Establishment Labs Holdings, Inc. is a medical technology company that designs, manufactures and markets medical devices for aesthetic plastic surgery, whose flagship product line is the Motiva brand of silicone breast implants.  The Company sells its products (and those it is authorized to sell) through distributors and a direct sales force in over 60 countries worldwide.  Establishment Labs, founded in 2004, announced the closing of its initial public offering on July 23, 2018, and trades on the Nasdaq exchange (under the ticker symbol "ESTA").  Establishment Labs is domiciled in the British Virgin Islands with its principal place of business in Alajuela, Costa Rica.

6.  Defendant Keller Medical, Inc. is a private company that designs a funnel-shaped implant delivery device known as the Keller Funnel, a best-in-class device that is rapidly becoming the industry standard. The Keller Funnel assists with the delivery of pre-filled implants by providing a low friction shell-tissue interface during implant insertion using a no-touch technique to prevent contamination. The company was incorporated in Delaware in 2008 and was based in Stuart, Florida. As of June 23, 2017, Keller Medical operates as a subsidiary of Allergan Sales, LLC.

7.  Defendant Allergan Sales, LLC, a wholly owned subsidiary of Defendant Allergan plc, manufactures and wholesales drugs and pharmaceutical products. The company was formerly known as Allergan Medical Optics. Allergan Sales, LLC is an LLC incorporated in 2002 under the laws of the state of Delaware and is based in Irvine, California.

8.  Defendant Allergan plc is a multinational company in the pharmaceutical industry with 2017 revenues approaching $16 billion. The company markets brand products in six therapeutic areas, including Aesthetics/Dermatology/Plastic Surgery, where it competes with Establishment Labs. Indeed, Allergan's Natrelle-branded implants compete directly with Plaintiff's Motiva implants. Allergan plc was formed on February 18, 2015, when its predecessor, Actavis, acquired the pre-2015 Allergan, Inc. and assumed the Allergan name. The Company is headquartered in Dublin, Ireland and has 40 manufacturing facilities, 27 global R&D centers, and marketing/sales facilities worldwide, including in the United States. Allergan also has a significant presence in the state of California. Allergan plc is traded on the New York Stock Exchange under the ticker symbol AGN. Allergan Sales, LLC and Allergan plc are sometimes collectively referred to herein as "Allergan."

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because Plaintiff is not a citizen of a state in which any Defendant is a citizen and because the value of the matter in controversy exceeds $75,000 with respect to Plaintiff's claims against each Defendant.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims at issue in this lawsuit occurred in this District. In particular, Defendant Allergan Sales, LLC – which acquired Defendant Keller Medical, Inc. in June of 2017 and has refused to fulfill the orders placed by Establishment Labs – is headquartered in Irvine, California.

## GENERAL ALLEGATIONS

**The Distribution Agreement**

11. On October 13, 2016, Keller Medical and Establishment Labs entered into a distribution agreement, pursuant to which Keller would supply its insertion sleeve to Establishment Labs at price points dependent on the volume of units purchased by Establishment Labs. (A true and correct copy of the Distribution Agreement, including the Schedules thereto, is attached hereto as Exhibit A). For example, for orders of 10,000 units or fewer, the price point was $32.00 each. For orders of 25,000 or more, the per-unit price was $28.00. *See* Exhibit A at Schedule 2.

12. Under the Distribution Agreement, Establishment Labs was given distribution rights for the Keller Medical insertion sleeve in Europe, Brazil and other countries. (Specifically, Establishment Labs' "Territory" under the agreement includes all sales "outside of United States, Canada, China, and UK." *See* Exhibit A, at p. 1). Moreover, per the agreement, the products purchased from Keller Medical could only be sold and bundled with Establishment Labs' breast implant (*id*.), and Establishment Labs "shall market and sell the Products only as a Bundled Product under the trademark 'MotivaImagine.'" *Id*. at 2. Under the

agreement, Establishment Labs is only allowed to purchase insertion sleeves from Keller Medical "and will not purchase any substitutes for the [Keller Product] from any other supplier." *Id*.

13. The term of the Distribution Agreement is five (5) years, with automatic 2-year extensions, unless a party terminated with six months' notice prior to the automatic renewal date. *Id*. at p. 1.

14. Under the "Early Termination" provisions of the agreement, either party could terminate the agreement prematurely only if (i) the other party fails to pay any undisputed amount after a 14-day cure period, (ii) the other party commits a material breach of the agreement and fails to cure within 30 days after receiving written notice of said breach, (iii) the other party repeatedly breaches the terms of the contract in a manner reflecting no intention to honor the agreement, (iv) the other party goes into bankruptcy, or (v) a change-in-control of the other party occurs. *Id*. at p. 6. None of the above-enumerated grounds authorizing early termination of the Distribution Agreement by Keller Medical occurred here.[2]

**Early Performance under the Distribution Agreement**

15. As noted, the Distribution Agreement contained an Upfront Purchase Order requirement pursuant to which Establishment Labs placed an order for 5,000 units and was obligated to pay Keller Medical $160,000 ($32.00/unit) – half of the amount ($80,000) at execution of the agreement, and the other half upon delivery of the insertion sleeves to Establishment Labs. *Id*. at p.1. Establishment Labs placed

---

[2] The Distribution Agreement contained many other terms imposing burdens on Establishment Labs, including: record-keeping requirements to ensure that Establishment Labs paired its breast implant products with the Keller insertion sleeve when selling the bundled product "for use in a single patient" (*see id*. at pp. 2-3, 4); forecasting requirements to provide to Keller Medical in November of each year so that it could anticipate Establishment Labs' product needs in the upcoming 12 months (*id*. at 4); regulatory requirements obligating Establishment Labs to secure and maintain registration for the products sold in any country in the Territory (*id*. at 3); and financial obligations for any training of Establishment Labs marketing personnel on the features of the Keller Funnel (*id*. at 6).

this order in January of 2017, which was honored by Keller Medical, and Establishment Labs paid in full for these insertion sleeves.

16. Establishment Labs placed a second order for an additional 5,000 insertion sleeves in May of 2017 – similarly obligating Establishment Labs to pay Keller Medical $160,000 ($32.00/unit), half upon ordering and half upon delivery of the products. That order was also fulfilled by Keller Medical, and Establishment Labs tendered payment in full for those insertion sleeves.

17. As expected, Establishment Labs has successfully sold through to physicians and hospitals in its Territory the bundled Motiva insertion sleeve and breast implant product. Establishment Labs has plans on selling much more of this product in the coming months and years; unfortunately, these plans have been derailed.

18. The May 2017 purchase order was the last one fulfilled by Keller Medical. In other words, less than seven months into a five year Distribution Agreement, Keller Medical (or its successor entity) refused to supply additional ordered products to Establishment Labs.

**Allergan Acquires Keller Medical**

19. On June 7, 2017, Defendant Allergan plc announced that "Allergan's wholly-owned subsidiary, Allergan Sales LLC, agreed to acquire Keller Medical, Inc., a privately held medical device company and developer of the Keller Funnel." A true and correct copy of Allergan plc's press release is attached hereto as Exhibit B. Terms of the transaction between Allergan and Keller were not disclosed.

20. After the Allergan acquisition, Keller Medical operated as a subsidiary of Defendant Allergan Sales, LLC.

**Keller/Allergan Refuses to Fulfill Purchase Orders**

21. After the announced acquisition of Keller Medical by Allergan, Establishment Labs placed five (5) separate purchase orders for the Keller Funnel

insertion sleeve product. None of the purchase orders were honored by Keller Medical (or Allergan).

22.  Establishment Labs made repeated inquiries into the refusal to fulfill the orders, even asking if there were adjustments to the orders that Establishment Labs could make to help make honoring the orders more feasible for Defendants. No explanation or rationale was ever forthcoming from either Keller Medical or Allergan. Instead, Keller Medical and/or Allergan simply responded that the purchase orders in question were "not accepted."

23.  Defendants' position appears to be that because the Distribution Agreement states:

> Distributor shall place purchase orders from time to time, which shall be subject to acceptance by Keller, (*id*. at p. 4),

that Keller Medical has no obligation whatsoever to honor any purchase order. Such a position is at odds with the structure and the spirit of the parties' agreement, which is a five-year arrangement (with automatic renewals) and which contains specific grounds for termination of the agreement. Moreover, such an interpretation of this clause would essentially remove any obligations by Keller Medical to perform under the Distribution Agreement, and would render many of the terms (including the termination provisions) nugatory – which is universally disfavored under the law. In addition, this language was included to give Keller Medical an ability to impose a business reality check on potential purchase orders from Establishment Labs (*i.e.*, to allow Keller Medical to refrain from fulfilling unexpectedly large orders from Establishment Labs or orders on products Keller Medical may be phasing out).[3] Finally, every contract contains an implied

---

[3] As noted, Establishment Labs was required to provide Keller Medical with 12-month forecasts in November for the following year. *See* Ex. 1 at p. 4. This would give Keller Medical a heads up on the expected orders from Establishment Labs, which were to be delivered within three months of order placement. *Id*. If
(continued...)

covenant of good faith and fair dealing.  Defendants' interpretation of this clause is directly at odds with this implied covenant.

24.  On information and belief, Establishment Labs alleges that the refusal to fulfill the purchase orders is motivated by Defendant Allergan's desire to block Establishment Labs' ability to compete in the breast implant market in Europe, Brazil (and other countries), to the benefit of Allergan (and its sales of its Natrelle-branded implants) and to the detriment of Establishment Labs and the consumers of the MotivaImagine bundled products in Europe, Brazil (and other countries).  On further information and belief, Establishment Labs alleges that Defendants' improper refusal to honor the terms of the Distribution Agreement is part and parcel of Allergan plc's goal of monopolizing sales in the breast-implant market by improperly blocking any competitors' use of the industry-standard, best-in-class, Keller Medical insertion sleeve so that only Allergan's sales force could provide the Keller sleeve to surgeons implanting Allergan's breast implant products.  In all events, there is no good-faith basis for Defendants' repeated failure to honor the terms of the Distribution Agreement.

**The Harm to Establishment Labs and the Market**

25.  The conduct of Defendants, which has frustrated the contract between Establishment Labs and Keller Medical, has caused significant harm to Establishment Labs.  Plaintiff worked for more than two years to get an agreement

---

(...continued from previous page)
Establishment Labs placed an unexpectedly large order, then Keller Medical would have reasonable grounds for not accepting the order.

Similarly, the Distribution Agreement also specifically notes that Keller Medical may make changes to the specifications of the insertion sleeve product. *Id*. at 2.  If Establishment Labs placed an order for older products that Keller Medical was discontinuing (or wanted to phase out), then it could have reasonably withheld acceptance of the order on this basis.

But the provision Defendants apparently rely on was never intended to (and does not) give Keller Medical or Allergan carte blanche to reject any order on a whim.

with Keller Medical that was mutually satisfactory and beneficial. The importance of this contract is reinforced by the fact that for all practical purposes the Keller Funnel – branded or unbranded – has been confirmed as the industry standard. It is a best-in-class device and has been endorsed by several influential trade bodies, including ISAPS (the International Society of Plastic Surgeons), ASPRS (American Society for Photogrammetry and Remote Sensing), BAPRAS (British Association of Plastic, Reconstructive and Aesthetic Surgeons), and ASPS (American Society of Plastic Surgeons). Not surprisingly, Establishment Labs has invested considerable resources in marketing and promoting its breast implant bundled with the industry-standard Keller insertion sleeve under the Motiva tradename. Surgeons in Europe, Brazil (and other countries) are excited about Establishment Labs' bundled offering and expect continued delivery of the product in the coming months and years. The failure to meet surgeon expectations on the bundled Motiva insertion sleeve and breast implant product has undermined and will continue to harm Establishment Labs' reputation and good will in the industry.

26. Separately, Establishment Labs has spent considerable time and resources in seeking regulatory registration of the products all over the world, including important markets outside of Europe . These costs were incurred with the reasonable expectation that Establishment Labs would have its purchase orders fulfilled so that it could market the bundled products in Europe, Brazil (and other countries within its "Territory") in 2019 and beyond.

27. In addition, Establishment Labs has expended considerable time and resources working with Keller Medical on innovation. In particular, the parties were working on an improved insertion sleeve for other types of implants, which sleeve involved (a) a smaller, 2.5 cm insertion size for use in minimally invasive surgeries, and (b) a new ink color for the surgical markings on the sleeve to better assist the surgeon during the implant procedure. The latter change required biological testing for the new ink, and a separate purchase order was placed for this testing. These

1 innovations have been halted commensurate with the refusal to honor orders under
2 the Distribution Agreement.

3     28.    All of the expenditures for the Keller Medical products are wasted if
4 Defendants are permitted to frustrate the terms of the Distribution Agreement by
5 refusing to fulfill purchase orders from Establishment Labs. This damage is
6 separate and apart from the lost sales of the bundled Motiva insertion sleeve and
7 implant product.

8     29.    Finally, the bundled Motiva insertion sleeve and breast implant product
9 is a proven way to perform surgeries in a sterile and safe way for patients. The
10 refusal by Defendants to honor the Distribution Agreement removes this proven,
11 safe product from the market, undermining physician and patient choice.

**FIRST CLAIM FOR BREACH OF CONTRACT**
**(Against Keller Medical and Allergan Sales, LLC)**

14     30.    Establishment Labs realleges each and every allegation set forth in
15 Paragraphs 1 through 29 inclusive, and incorporates them by reference herein.

16     31.    The Distribution Agreement is a valid and enforceable contract
17 between Plaintiff Establishment Labs on one hand, and Defendant Keller Medical
18 (and then its successor, Defendant Allergan Sales, LLC) on the other.

19     32.    Establishment Labs has performed all of its obligations under the
20 Distribution Agreement (excluding those excused by Defendants' actions, if any).

21     33.    Keller Medical's and Allergan Sales, LLC's actions complained of
22 herein – namely, the refusal to fulfill the purchase orders submitted by
23 Establishment Labs, which orders were consistent with the parties' Distribution
24 Agreement – constitutes a breach of that agreement.

25     34.    The bundled product offering from Establishment Labs to be sold in its
26 Territory under the Distribution Agreement is unique and best-in-class due, in large
27 part, to the insertion sleeve from Keller Medical. Given this, only specific

performance can adequately compensate Establishment Labs going forward, and Plaintiff thus seeks specific performance of the Distribution Agreement.

35. In addition, and as a direct and proximate result of these Defendants' breach of the Distribution Agreement, Establishment Labs has been harmed and is entitled to monetary damages against each of them in an amount to be determined at trial, but exceeding the minimum unlimited jurisdiction of this Court, exclusive of attorneys' fees and costs.

**SECOND CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH**
**(Against Keller Medical and Allergan Sales, LLC)**

36. Establishment Labs realleges each and every allegation set forth in Paragraphs 1 through 35 inclusive, and incorporates them by reference herein.

37. The Distribution Agreement is a valid and enforceable contract between Plaintiff Establishment Labs on one hand, and Defendant Keller Medical (and then its successor, Defendant Allergan Sales, LLC) on the other.

38. Implicit in the Distribution Agreement is a covenant of good faith and fair dealing. which is a legal presumption that the parties to a contract will deal with each other honestly, fairly, and in good faith, so as not to destroy the right of the other party to receive the benefits of the contract. Stated somewhat differently, the implied covenant inheres in all contracts and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.

39. Establishment Labs has performed all of its obligations under the Distribution Agreement and dealt with these Defendants honestly, fairly, and in good faith at all relevant times.

40. These Defendants' misconduct as described above – namely, the arbitrary and unreasonable refusal to honor the purchase orders submitted by Establishment Labs, which orders were consistent with the parties' Distribution

1 Agreement – constitutes a breach of the implied covenant of good faith and fair
2 dealing.

3     41.    The bundled product offering from Establishment Labs to be sold in its
4 Territory under the Distribution Agreement is unique and best-in-class due, in large
5 part, to the insertion sleeve from Keller Medical.  Given this, only specific
6 performance can adequately compensate Establishment Labs going forward, and
7 Plaintiff thus seeks specific performance of the Distribution Agreement for these
8 Defendants' breach of the implied covenant of good faith and fair dealing.

9     42.    As a direct and proximate result of these Defendants' breach of the
10 implied covenant of good faith and fair dealing, Establishment Labs has been
11 harmed and is entitled to monetary damages against each of them in an amount to be
12 determined at trial, but exceeding the minimum unlimited jurisdiction of this Court,
13 exclusive of attorneys' fees and costs.

**THIRD CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against Allergan plc)**

16     43.    Establishment Labs realleges each and every allegation set forth in
17 Paragraphs 1 through 42 inclusive, and incorporates them by reference herein.

18     44.    The Distribution Agreement is a valid and enforceable contract
19 between Plaintiff Establishment Labs on one hand, and Defendant Keller Medical
20 (and then its successor, Defendant Allergan Sales, LLC) on the other.

21     45.    Defendant Allergan plc has knowledge of the Distribution Agreement.

22     46.    Allergan plc's conduct complained of above – namely, intentionally
23 directing Keller Medical and/or Allergan Sales, LLC to refuse to honor and fulfill
24 purchase orders submitted by Establishment Labs so that Allergan could capture
25 for itself sales that otherwise would have gone to Establishment Labs in its
26 Territory –  constitutes tortious interference with the Distribution Agreement.

27     47.    As a direct and proximate result of Allergan plc's tortious interference
28 of the Distribution Agreement, Establishment Labs has been harmed and is entitled

1 to monetary damages in an amount to be determined at trial, but exceeding the minimum unlimited jurisdiction of this Court, exclusive of attorneys' fees and costs.

48. Allergan plc's conduct in causing Keller Medical and/or Allergan Sales, LLC not to perform under the Distribution Agreement is sufficiently egregious to warrant punitive damages.

**FOURTH CLAIM FOR CIVIL CONSPIRACY**
**(Against All Defendants)**

49. Establishment Labs realleges each and every allegation set forth in Paragraphs 1 through 48 inclusive, and incorporates them by reference herein.

50. All Defendants, acting in confederation with each other, agreed to carry out a plan whereby Keller Medical (or its successor, Allergan Sales, LLC) would wrongfully, arbitrarily, and unreasonably refuse to accept purchase orders submitted by Establishment Labs, which orders were consistent with the terms of the Distribution Agreement.

51. The plan was executed so as to deprive Establishment Labs' ability to penetrate the market for breast implant surgery in the Territory outlined in the Distribution Agreement to the benefit of the Allergan defendants and to the detriment of Establishment Labs and the physicians and patients who were expecting to use the bundled Motiva insertion sleeve and implant product offered by Establishment Labs.

52. The conspiracy has resulted in the frustration of the Distribution Agreement, causing actual harm to Establishment Labs in an amount to be determined at trial, but exceeding the minimum unlimited jurisdiction of this Court, exclusive of attorneys' fees and costs.

## FIFTH CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

53. Establishment Labs realleges each and every allegation set forth in Paragraphs 1 through 52 inclusive, and incorporates them by reference herein.

54. Establishment Labs enjoys valuable relationships with physicians and hospitals to whom it sells its breast implant related products, including the bundled Motiva insertion sleeve and breast implant – the product contemplated under the Distribution Agreement.

55. Defendants were aware of Plaintiff's relationships with these surgeons and hospitals and were further aware of the likelihood of future business dealings between Establishment Labs and these customers.

56. By intentionally undermining Establishment Labs' rights under the Distribution Agreement – namely, the refusal by Defendants to fulfill orders placed by Establishment Labs consistent – Defendants actually interfered with Establishment Labs' prospective economic relations with these customers.

57. This interference by Defendants resulted in harm to Establishment Labs, in an amount to be determined at trial, but exceeding the minimum unlimited jurisdiction of this Court, exclusive of attorneys' fees and costs.

58. Defendants' intentional interference in Plaintiff's prospective economic relations with customers was sufficiently egregious to warrant punitive damages.

## SIXTH CLAIM FOR UNFAIR COMPETITION
### (Against Allergan plc)

59. Establishment Labs realleges each and every allegation set forth in Paragraphs 1 through 58 inclusive, and incorporates them by reference herein.

60. The acts and conduct of Defendant Allergan plc alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practices

as defined by California Business and Professions Code section 17200 *et seq.* ("Section 17200").

62. This defendant's conduct is unfair under Section 17200 because the harms to consumers (doctors and patients) caused by its oppressive and unscrupulous misconduct far outweighs any utility arising out of that conduct and because such monopolistic misconduct runs afoul of antitrust laws, including in Europe. Defendant Allergan plc has no legitimate motives for its unlawful actions of causing Keller Medical to refuse to honor the terms of the Distribution Agreement.

62. Defendants' conduct – including that of Allergan plc – is unlawful under Section 17200 because, as described in detail in the paragraphs above, Defendants have engaged in the independently unlawful wrongs of breach of contract, tortious interference with contract, tortious interference with prospective economic advantage, and conspiracy, to Establishment Labs' detriment.

63. Defendants' unlawful, unfair, and/or fraudulent business acts or practices have caused and continue to cause significant injury to Establishment Labs that can only be remedied by Defendants' specific performance of the Distribution Agreement. Thus, pursuant to California Business and Professions Code section 17203, Establishment Labs is entitled to an order of this Court enjoining Defendants, and each of them, from continuing to engage in unlawful, unfair, and/or fraudulent business acts or practices as defined in Section 17200 – namely, the unwarranted and improper refusal to honor reasonable purchase orders submitted by Establishment Labs pursuant to the Distribution Agreement.

///

# PRAYER FOR RELIEF

WHEREFORE, Establishment Labs prays for judgment as follows:

(i) For an order directing Defendants Keller Medical and/or Allergan Sales, LLC to specifically perform under the Distribution Agreement, including by directing these defendants to honor all reasonable purchase orders submitted by Establishment Labs for the five-year term of the agreement (or until the Distribution Agreement is otherwise validly terminated, pursuant to the agreement's termination provisions);

(ii) an award of compensatory damages – to be proven at trial in excess of $2,000,000.00 – arising from Defendants' breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contract, conspiracy, and tortious interference with prospective economic advantage;

(iii) For an award of pre and post-judgment interest;

(iv) For punitive damages sufficient to punish Defendants for their malicious and unwarranted behavior and to deter similar future misconduct by Defendants;

(v) For an award of Establishment Labs' costs of suit; and

(vi) For such other, further, and different relief as the Court deems proper under the circumstances.

///

## **DEMAND FOR JURY TRIAL**

Establishment Labs demands a trial by jury of any and all issues triable of right before a jury.

Dated: August 30, 2018

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Dylan J. Liddiard
 Dylan J. Liddiard

Attorneys for Plaintiff
Establishment Labs Holdings, Inc.